# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 17-1146
Filed:  April 1, 2019
Unpublished

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| LINDA CARTMEL, | |
| Petitioner, | Fact Ruling; Influenza ("Flu") Vaccine; Shoulder Injury Related to Vaccine Administration ("SIRVA"); Onset; Special Processing Unit ("SPU") |
| v. | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*Andrew Donald Downing*, Van Cott & Talamante, PLLC, Phoenix, AZ, for petitioner.
*Jennifer Leigh Reynaud*, U.S. Department of Justice, Washington, DC, for respondent.

## RULING ON FACTS[1]

**Dorsey,** Chief Special Master:

On August 24, 2017, Linda Cartmel ("petitioner" or "Ms. Cartmel") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*, (the "Vaccine Act" or "Program").  Petitioner alleges the influenza ("flu") vaccine she received on December 26, 2016, caused her to suffer a left shoulder injury satisfying the definition of a Shoulder Injury Related to Vaccine Administration ("SIRVA") as codified at 42 U.S.C. § 300aa-14 ("Vaccine Injury Table").  Petition at 1, 4.  The case was assigned to the Special Processing Unit ("SPU").

Before the undersigned is petitioner's motion for a fact ruling on the issue of onset.  After a review of the record as a whole, and for the reasons set forth below, the

---

[1] The undersigned intends to post this decision on the United States Court of Federal Claims' website. **This means the decision will be available to anyone with access to the internet.**  In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access. Because this unpublished decision contains a reasoned explanation for the action in this case, undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).

1

undersigned finds by preponderant evidence that Ms. Cartmel's left shoulder pain occurred within forty-eight hours of her December 26, 2016 flu vaccination.

## I.   Procedural History

In support of her petition, petitioner filed medical records and her affidavit. ECF No. 6 (Pet.'s Exs. 1 (affidavit), 2-10 (medical records)).[2] An initial status conference was held on October 3, 2017. Following the conference, respondent was ordered to provide his position in the case indicating whether he was amenable to settlement. Order, ECF. No. 9.

On May 7, 2018, respondent reported that he intended to defend the case and requested a deadline be set for a Rule 4(c) report. ECF No. 16. Respondent filed his Rule 4(c) report on July 13, 2018, contesting petitioner's claim to vaccine injury compensation. Resp. Rep., ECF No. 19. In it, respondent posits that petitioner has not established by preponderant evidence that the onset of her injury occurred within forty-eight hours of her December 26, 2016 influenza vaccination. *Id.* at 6-7. Following the filing of respondent's report, petitioner filed additional medical records as well as statements from her brother, Thomas Buice, and husband, Thomas B. Cartmel. ECF No. 20 (Pet.'s Ex. 12, (Statement of Thomas Buice), Pet.'s Ex. 13 (Statement of Thomas B. Cartmel); ECF No. 22 (Pet.'s Exs. 14-17 (medical records)); ECF No. 23 (Pet.'s Ex. 18 (text message screenshots between Linda Cartmel and Jade Henderson), Pet.'s Ex. 19 (Amazon purchase invoice), Pet.'s Ex. 20 (Aff. of Jade Henderson)).

A status conference was held on August 20, 2018 to discuss future proceedings following respondent's Rule 4(c) report contesting entitlement. Order, ECF No. 24. During the conference, respondent reported that the additional affidavit evidence filed by petitioner did not change his position. *Id.* A tentative schedule was discussed for proceeding with a fact ruling by the undersigned on this issue of onset. *Id.* Following the conference, the undersigned reviewed the record and determined that a fact hearing would not be necessary. *Id.* A schedule was set for petitioner to file a motion for fact ruling as to onset. *Id.*

On September 27, 2018, petitioner filed her motion for fact ruling as to the issue of onset. Pet.'s Mot., ECF No. 25. Following an unopposed motion for extension, respondent filed a response to petitioner's motion on December 12, 2018. Resp. ECF No. 27. Petitioner filed a reply on December 14, 2018. Reply, ECF No. 28.

The motion is now ripe for ruling.

---

[2] Petitioner later filed a letter from Florida Blue detailing the changing network status of Dr. Pradeep Vangala. ECF. No. 10 (Pet.'s Ex. 11).

## II. Relevant Medical Records

Petitioner was a sixty-nine-year-old retired regional property manager when she received a flu vaccine in her left deltoid on December 26, 2016, at Publix pharmacy in Ocala, Florida. Ex. 2 at 1-2; Ex. 4 at 5. Petitioner's medical history was significant for anxiety and post-traumatic stress disorder for which she was prescribed Xanax. Ex. 6 at 7; Pet. Ex. 7 at 1, 16; Pet. Ex. 10 at 4-5.

In a letter dated January 18, 2017, petitioner's insurance provider reminded her that as of January 1, 2017, her primary care physician was no longer in her HMO provider network. Ex. 11. On February 20, 2017, petitioner saw Adrian Moreno, M.D., as a new patient establishing care. Ex. 8 at 1, 5. The records from this appointment indicate that petitioner sought a refill of her anxiety medication. *Id.* Dr. Moreno did not refill her medication for reasons set forth in the records. *Id.* No shoulder pain was noted in the record. Routine urinalysis and bloodwork was ordered and returned normal results. *Id.* at 6-10.

On March 20, 2017, petitioner established care with another primary care physician, Jose Roman, M.D. Ex. 3 at 34-36. "Left arm and shoulder pain" was listed as a reason for the appointment. Ex. 3 at 34. Dr. Roman's assessments included PTSD, primary osteoarthritis of left shoulder, impacted cerumen of left ear, and anxiety. *Id.* Dr. Roman refilled petitioner's anxiety medication and ordered an x-ray of her left shoulder that was unremarkable. *Id.*; Ex. 9 at 9.

Dr. Roman later ordered an MRI of petitioner's left shoulder which was completed on April 7, 2017. Ex. 9 at 6-7. The MRI showed mild to moderate tendonitis of the supra and infraspinatus with a partial interstitial tear of the conjoined tendon for these muscles; mild to moderate subscapular tendonitis; moderate capsulitis with small to moderate effusion possibly reactive in origin on inflammatory arthritis; fraying of the superior labrum; mild AC joint arthritis with a downsloping acromion process, possibly predisposing petitioner to shoulder impingement syndrome. *Id.* Dr. Roman referred petitioner to an orthopedist. Ex. 3 at 16.

On April 21, 2017, petitioner saw Leah A. Sadler, ARNP, at Dr. Roman's office, concerned about a swollen lymph node. Ex. 3 at 30-32. On examination, petitioner had limited range of motion in her left shoulder. *Id.* Nurse Sadler assessed petitioner with adhesive capsulitis (frozen shoulder) and supraclavicular fossa fullness. *Id.* at 31. A chest x-ray and thyroid ultrasound were completed, and no abnormalities were observed. *Id.* Petitioner was prescribed hydrocodone and given "Frozen Shoulder: Care Instructions." *Id.*

On May 3, 2017, on referral from Dr. Roman, petitioner saw orthopedic surgeon Derek J. Farr, D.O., for a non-surgical consultation on her left shoulder pain. Ex. 5 at 5. On the intake form, petitioner wrote that she was being seen for "L Shoulder, Deltoid Arm, Elbow, forearm, wrist." *Id.* at 104. Petitioner told Dr. Farr that her left shoulder

3

"pain has been present since 12/26/16 when she had a flu shot." *Id.* at 101. The examination showed positive shoulder impingement, limited range of motion, and normal strength in petitioner's left shoulder. *Id.* at 103. Dr. Farr noted that the MRI was consistent with adhesive capsulitis and bursitis. *Id.* Dr. Farr administered a corticosteroid injection in petitioner's left shoulder and referred her for physical therapy (PT). *Id.*

On May 9, 2017, petitioner underwent an initial physical therapy evaluation and reported "off the chart" left shoulder pain since her December 2016 flu vaccine until receiving a steroid injection. Ex. 5 at 99.

Petitioner saw Dr. Roman for a follow-up on June 20, 2017. Ex. 3 at 22-24. Her examination was as normal and petitioner reported that she had stopped taking the narcotic pain medication after receiving a steroid injection. *Id.* On June 21, 2017, petitioner saw Quint Klingbeil, PA-C, who with Dr. Farr's office. Ex. 5 at 69-72. Petitioner reported that she was attending PT and had improved following the last steroid injection. *Id.* Petitioner was given a second corticosteroid injection in her left shoulder. *Id.* Petitioner continued with physical therapy. Ex. 5 at 50-63.

### III.    Legal Standard

A petitioner must prove, by a preponderance of the evidence, the factual circumstances surrounding her claim. 42 U.S.C. § 300aa–13(a)(1)(A). To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Human Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). Contemporaneous medical records are presumed to be accurate. *See Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Human Servs.,* No. 11–685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Human Servs.,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

Pursuant to the Vaccine Act, the special master may find the time period for the first symptom or manifestation of onset required for a Table injury is satisfied "even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such a period." § 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset . . . occurred within the time period described in the Vaccine Injury Table." (*Id.*; *accord Tenneson v. HHS*, No. 16-1664V, 2018 WL 3083140, at *5 (Fed. Cl. Spec. Mstr. Mar. 30, 2018) (finding, despite prior records indicating non-tender extremities, that "respondent unreasonably dismisses petitioner's contemporaneous treatment records since the records were not created contemporaneously with the onset of

4

petitioner's shoulder pain."), *mot. for rev. denied*, --- Fed. Cl. ---, 2019 WL 1235644 (Feb. 28, 2019)).

Despite the weight afforded medical records, special masters are not bound rigidly by those records in determining onset of a petitioner's symptoms. *Vallenzuela v. Sec'y of Health & Human Servs.*, No. 90-1002V, 1991 WL 182241, at *3 (Fed. Cl. Spec. Mstr. Aug. 30, 1991); *see also Eng v. Sec'y of Health & Human Servs.*, No. 90-1754V, 1994 WL 67704, at *3 (Fed. Cl. Spec. Mstr. Feb. 18, 1994) (Section 13(b)(2) "must be construed so as to give effect also to § 13(b)(1) which directs the special master or court to *consider* the medical records (reports, diagnosis, conclusions, medical judgment, test reports, etc.), but does not require the special master or court *to be bound* by them").

### IV.   Discussion

Effective for petitions filed beginning on March 21, 2017, SIRVA is an injury listed on the Vaccine Injury Table. *See* Vaccine Injury Table: Qualifications and aids to interpretation. 42 C.F.R. § 100.3(c)(10). The undersigned's findings are informed by the Qualifications and Aids to Interpretation for SIRVA criteria used to evaluate such claims. The criteria are as follows:

> A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following: (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection; (ii) Pain occurs within the specified time-frame; (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and (iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

*Id.; see also* National Vaccine Injury Compensation Program: Revisions to the Vaccine Injury Table, 80 Fed. Reg. 45132, Notice of Proposed Rulemaking, July 29, 2015 (citing Atanasoff S, Ryan T, Lightfoot R, and Johann-Liang R, 2010, *Shoulder injury related to vaccine administration (SIRVA)*, Vaccine 28(51):8049-8052).

The parties dispute whether petitioner has satisfied the second SIRVA criteria: "[pain occur[ring] within the specified time-frame." To meet this criterion, petitioner must show by preponderant evidence that her left shoulder pain began within forty-eight hours of her December 26, 2016 flu vaccination. 42 U.S.C. § 300aa–13(a)(1)(A); 42 C.F.R. § 100.3(c)(10).

Petitioner alleges that the onset of her left shoulder pain occurred immediately after receiving the flu vaccination in the same shoulder on December 26, 2016. Mot. at

1.  Respondent argues that petitioner has not provided preponderant evidence that her left shoulder pain began with forty-eight hours after receiving the flu vaccination alleged as causal.  Resp. at 6-9.  Respondent premises his argument on what he characterizes as discrepancies between petitioner's non-medical onset evidence (affidavits, proof of purchase of medical goods, and text message screenshots), and petitioner's medical records.  For the reasons stated below, the undersigned declines to adopt the inferences respondent offers and finds instead that petitioner has provided preponderant evidence that her left shoulder pain began within forty-eight hours from her December 26, 2016 flu vaccination.

Turning first to petitioner's treatment records, when noted, onset is consistently placed within 48 hours of her December 26, 2016 flu vaccination.  Ex. 5 at 37 ("patient presents with left shoulder pain and stiffness which has been present since December 2016.  States she began having symptoms after a flu shot"); Ex. 5 at 38 ("[left shoulder pain] has been present since 12/26/16 when she had a flu shot"); Ex. 5 at 101.

Respondent notes that petitioner's May 3, 2017 appointment with orthopedic surgeon Dr. Derek J. Farr is "more than four months after her flu vaccination" and "is the first mention of a temportal [sic] association between petitioner's flu vaccine and the onset of her shoulder pain."  Resp. at 5 n.2 (referring to Ex. 5 at 101).  Respondent adds that petitioner "had been seen four times by three different medical providers in the interim."  Respondent's representation is not a fair picture of petitioner's course of treatment.

More accurately stated, petitioner had three office visits and imaging completed in the time between her December 26, 2016 flu vaccination and her May 3, 2017 appointment with Dr. Farr.  See Ex. 3 at 30-34; Ex. 8; Ex. 9.  The first of these interim office visits was with Dr. Moreno.  Ex. 8.  The undersigned is satisfied with petitioner's explanation as to why she did not discuss her left shoulder pain with Dr. Moreno.  Ex. 1 at ¶10.  The two remaining visits were with Dr. Roman's practice for treatment of left shoulder pain.  Dr. Roman's records lack a description of the onset of this pain.  Ex. 3 at 30-34.

Respondent unreasonably dismisses petitioner's medical records for seemingly paradoxical reasons.  Respondent dismisses the probative value of petitioner's May 2017 orthopedic records because they were not created more contemporaneously with petitioner's alleged December 2016 left shoulder pain onset.  Resp. at 5 n.2 (referring to Ex. 5 at 101).  Likewise, respondent also dismisses petitioner's March and April 2017 left shoulder treatment records – which are more contemporaneous with the onset of her shoulder pain – because they do not explicitly identify a date of onset.  Resp. at 4 (referring to Ex. 3 at 30-34).  The undersigned is not persuaded and instead finds each of petitioner's treatment records to be consistent with a finding that petitioner's left shoulder pain began within forty-eight hours following her receipt of the flu vaccine on December 26, 2016.

6

Moreover, petitioner's affidavit testimony is supported by the medical records. Petitioner has provided insurance records corroborating her need to reestablish a primary care provider. *Compare* Ex. 1 at ¶8 *with* Ex. 11.  When petitioner was able to see a new provider, her need for a refill of medication to treat her ongoing anxiety complicated the visit.  The records from petitioner's February 20, 2017 appointment with Dr. Moreno illustrate that petitioner's chief concern was to obtain a new prescription for her routine anxiety medication.  Ex. 8 at 5.  Unable to do so, petitioner sought a new provider with whom she was able to renew her anxiety prescription and seek treatment for her left shoulder pain.  Ex. 3 at 34.

Even if petitioner had delayed seeking treatment for less significant reasons it would not negate the value or credibility of her ongoing treatment records.  While a delay in seeking treatment might illustrate the severity of an injury, here Ms. Cartel has offered compelling testimony ascribing what can be characterized as a modest delay due to extraneous and unfortunate circumstances.

The undersigned does not find petitioner's delay in treatment to be dispositive given the facts and circumstances of this case.  Petitioner provided a cogent and credible explanation of why she delayed reporting her left shoulder pain to a medical provider.  After twenty-five years with the same primary care physician, petitioner was forced to find a new provider for insurance reasons.  Ex. 11.  Petitioner avers that given this unforeseen circumstance, in conjunction with her travel to care for her sister, getting a timely appointment was problematic.  Ex. 1 at ¶¶7-11.

Respondent argues that petitioner's non-medical evidence lacks any weight. Respondent offers that the text messages provided by affiant Jade Henderson are inherently unreliable and may instead reference petitioner's other shoulder.  Resp. at 8 (citing Ex. 18).  Respondent also asks the undersigned to infer, contrary to petitioner's sworn statement, that the heating pad she ordered in January 2017 (Ex. 19) was instead for her sister.  Yet, this evidence – provided under oath – supports petitioner's stated recollection that she was experiencing left shoulder pain in the months following her December 26, 2016 flu vaccination.  The undersigned finds petitioner's testimony, and that of her witness Jade Henderson, to be credible and persuasive.

Petitioner also submitted statements from her brother, Thomas Buice (Ex. 12), and husband, Thomas B. Cartmel (Ex. 13).  Both Mr. Buice and Mr. Cartmel recall petitioner having persistent left shoulder pain beginning on December 26, 2016.  Exs. 12 & 13.  The undersigned credits these statements as consistent with petitioner's recollection.

Medical records generally "warrant consideration as trustworthy evidence." *Cucuras,* 993 F.2d at 1528.  Here, Ms. Cartmel's medical records clearly identify her December 26, 2016 flu vaccination as the start of her left shoulder pain.  Ex. 5 at 37, 38, 101.  Additionally, the undersigned deems petitioner's sworn statement, and the statements of her witnesses to be reasonable and credible.  Exs. 1, 12, 13, 20.  Thus,

the undersigned finds that petitioner has provided preponderant evidence that her left shoulder pain began within 48 hours of her December 26, 2016 flu vaccination.

### V.     Conclusion

The undersigned finds, based on the record as a whole, that the onset of petitioner's left shoulder pain occurred within forty-eight hours of the flu vaccination she received on December 26, 2016.

The parties are encouraged to again consider an informal resolution of this claim. **Petitioner shall file a joint status report by no later than <u>Wednesday, May 1, 2019</u>, updating the court on the status of the parties' progress toward informal resolution.**

**IT IS SO ORDERED.**

<u>s/Nora Beth Dorsey</u>
Nora Beth Dorsey
Chief Special Master